UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

FRANCES STANTON JOHNSON,              Case No. 24-11112
                                                                      Chapter 13

Debtor.

## MEMORANDUM ORDER AND OPINION

This matter came before the Court on the Debtor's Motion to Sell Personal Property. (Doc. 91). Proper notice of hearing was given, and appearances were noted on the record. Upon consideration of the pleadings, record, stipulation, testimony, and exhibits this Court finds that the Debtor's Motion to Sell is due to be GRANTED allowing an auctioneer's fee of $7,174.21 and expenses of $450.00 for the reasons below.

### JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference by the District Court dated August 25, 2015. This is a core proceeding under 28 U.S.C. §157(b)(2)(N).

### FINDINGS OF FACT

The Debtor, Frances Stanton Johnson, ("Johnson") filed a Chapter 7 bankruptcy on May 6, 2024. The case was converted to Chapter 13 on June 6, 2024. Johnson's bankruptcy schedules valued her household goods and furnishings at $5,000.00, electronics at $600.00, and personal clothing at $100.00. (Doc. 41). She claimed the stated values as exempt. (*Id.*) Johnson's schedules aver that she did not own any automobiles. (*Id.*) On or about August 29, 2024, Johnson and Matt

1

Presley d/b/a Matt Presley Auctioneers ("Presley") entered into a Real Estate Auction Sales Authority Agreement ("Agreement") for the Debtor's real property located at 3364 Bristlecone Drive, Mobile, AL 36693 ("Real Property"). (Doc. 91-2). Presley also provided an Auction Proposal to sell Johnson's personal property for a 30% commission and a 15% buyer's premium. (*Id.* at 3).[1] Johnson filed an Application to Employ Presley on September 6, 2024, and an Order approving his employment *with regard to the Real Property* was entered on October 4, 2024. (Docs. 61,74). The Court entered an Order on November 13, 2024, approving the proposed sale of the Real Property, but it did not authorize Presley's employment with regard to the Debtor's personal property. (Doc. 89). On November 23, 2024, Johnson filed a Motion to Sell Estate Property, comprised of various items of personal property. (Doc. 91). At the initial setting, Johnson's counsel advised that she disputed the amount of commission claimed by Presley so the matter was set for an evidentiary hearing.

Prior to the hearing, the parties filed a Stipulation of Facts which is incorporated by reference herein. (Doc. 108). The Stipulation provides in part:

> . . .
>
> 4. [Presley] conducted an online auction of personal property which concluded on or about October 3, 2024.
> 5. The auction included two vehicles, a 2001 Jaguar and 2005 Mercedes Benz. Both vehicles were removed by the Debtor after the auction concluded.
> 6. The highest bid for the 2005 Mercedez Benz was $8,500.00.
> 7. The highest bid for the 2001 Jaguar was $2,100.00.
> 8. After the Debtor removed the vehicles from the sale, the gross sales for the remaining items at auction was $23,914.00.

(*Id.*)

Johnson and Presley testified at the evidentiary hearing. Johnson stated that although she agreed to Presley receiving 30% commission upon the sale of the personal property generally, she

---
[1] The Auction Proposal was not signed by the Debtor.

did not believe he was due any commission on the 2005 Mercedes Benz or 2001 Jaguar (collectively, the "Vehicles"). Johnson stated that she told Presley from the beginning that the Jaguar belonged to her brother,[2] the Mercedes was her daughter's[3], and Azalea City Credit Union ("ACCU") held a lien on the Mercedes. She testified that her brother decided not to sell the Jaguar because the bid amount was too low and the bidder on the Mercedes ("Frimpong"), retracted the bid because Johnson could not immediately deliver the certificate of title. Johnson explained that: (1) she did not have possession of the Mercedes' title because of ACCU's lien; (2) she could not pay the lien without the Auction Proceeds; and (3) she expected to receive payment from Presley at a scheduled meeting after the auction, but he did not show up. Johnson stated that the Mercedes was later sold to Frimpong for less than the auction bid because it had problems,[4] the proceeds were used to pay off the ACCU lien, and the remaining amount of $300.00 went to her daughter. Johnson also stated that she was not familiar with the requirements to sell property in bankruptcy, she did not know that she had to obtain court approval to sell personal property, she never received any of the auction proceeds, and she did not know who was holding the funds.

Presley testified that he and his employees spent considerable time cataloging the personal property and preparing for the online auction. He stated that he pays his employees hourly and charges a 15% Buyer's premium in addition to the 30% commission from the Seller to defray his expenses. He asserted that he was entitled to a commission on the Vehicles because it was Johnson's, "failure to turnover the keys to both vehicles as to why those vehicles were subsequently not sold". (Transcript of Evidentiary Hearing 3:07:42). Presley contended that even

---

[2] Johnson produced a copy of the title to the Jaguar reflecting that it was owned by her brother, Edward Stanton.
[3] Johnson stated that the Mercedes was acquired for her daughter when she was in high school and too young to purchase it herself and her daughter worked and made the payments on it.
[4] Johnson testified that the top of the Mercedes did not go down and she told Presley about that issue but he did not disclose the problem to Frimpong.

3

though he did not have an order from the bankruptcy court authorizing him to sell the personal property, he had Johnson's permission and she agreed to pay the commission as set out in the Auction Proposal.

Presley's "Consignor Settlement" reflects that he received $23,914.00 ("Auction Proceeds") from the sale of the personal property. (Doc. 91-1 at 39). His testimony also established that the $4,650.00 amount listed on the Consignor Settlement as "Total Expenses" was comprised of $450.00 for a home appraisal expense and $4,250.00 in commissions he would have received if the Vehicle sales had been consummated. Presley confirmed that he is still holding the Auction Proceeds.

CONCLUSIONS OF LAW

Specific provisions of the Bankruptcy Code govern the sale of property of the bankruptcy estate, and the employment and compensation of professionals. 11 U.S.C. §§327, 363, 328. Section 363 addresses the use, sale, or lease of property and requires court approval to sell property of the estate, outside the ordinary course of business. 11 U.S.C. §363(b)[5]; see also, *Bank of New York Mellon v. 251 Gotham LLC*, 604 B.R. 71, 77 (Bankr. S.D. Ala. 2019) (citing *In re Smith*, 352 B.R. 500, 503 (Bankr. N.D. Ala. 2006)). Sales of property of the estate without court permission may be invalidated. *Id.* at 77 (citing *In re Zeman*, No. 09-52559-C, 2010 WL 3123144 (Bankr. W.D. Tex. Aug. 6, 2010); *In re DeRosa-Grund*, 544 B.R. 339, 367-68 (Bankr. S.D. Tex. 2016) (transfer of property of estate without court approval was void); *In re Manchester Gas Storage, Inc.*, 309 B.R. 354, 379 (Bankr. N.D. Okla. 2004) (stating in the context of §363(b) that

---

[5] As the language of statutes cited herein refer to powers of the "Trustee", the Court notes that Section 1303 of the Bankruptcy Code provides that, " . . .subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title. 11 U.S.C.§1303.

"[t]ransactions requiring, but lacking, approval may be set aside as void"). Section 327(a) of the Bankruptcy Code requires court approval of the employment of professional persons, including auctioneers.11 U.S.C.§ 327(a); *Fed R. Bankr. P. 2014*; *In re Fundamental Long Term Care, Inc.,* 81 F.4th 1264, 1268 (11th Cir. 2023), cert. denied sub nom. *Est. of Arlene Townsend v. Berman*, 144 S. Ct. 1098, 218 L. Ed. 2d 342 (2024). When timely requested and approved, contingency fees and an auctioneer's commission may be allowed under 11 U.S.C. §328(a). Courts have considerable discretion in awarding fees and may ultimately award compensation different than agreed. 11 U.S.C. §§ 329, 330, 331; *In re Hillsborough Holdings Corp.,* 127 F.3d 1398, 1404 (11th Cir.1997); *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 878 (11th Cir.1990); *In re Sky Valley, Inc.,* 135 B.R. 925, 932 (Bankr. N.D. Ga. 1992). Bankruptcy courts are essentially courts of equity, relying on equitable principles in areas falling within the interstices of the Bankruptcy Code, including the proper disposition of funds. See *In re Lancaster Steel Co.,* 284 B.R. 152, 160 (S.D. Fla. 2002)(citing *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Empire for Him, Inc.,* 1 F.3d 1156, 1160 (11th Cir.1993); *Matter of First Colonial Corp. of America*, 693 F.2d 447, 450–51 (5th Cir.1982).

## ANALYSIS

As Presley's employment to sell the personal property was never approved, the auction could be invalidated, his compensation could be completely disallowed, or both; however, the Court finds that such result would be unduly harsh, impractical, and inequitable under the circumstances. Since the auction took place over six months ago and involved hundreds of relatively low-priced items, it would not be practical or economically feasible to void all the

individual sales. Johnson did not dispute that she agreed to pay a 30% commission on the items sold. Presley's testimony established that he invested substantial time, effort, and expense in auctioning the personal property, yielding the Auction Proceeds of $23,914.00. The record reveals that the Auction Proposal was disclosed to the Court by way of an attachment to the Application to Employ and it appears that the parties may have intended to seek approval thereof. (Doc. 61). As the Debtor's schedules value her personal property substantially lower than the Auction Proceeds, and the amount received exceeds the Debtor's exemptions, Presley's services will ultimately benefit the Bankruptcy Estate. Considering the type of auction, work involved, and the testimony of Johnson, the Court will allow a 30% commission on the Auction Proceeds in this instance.

Notwithstanding the foregoing, the Court finds that Presley is not entitled to a commission on the Vehicles for several reasons. First, as noted above, this Court could disallow any commission whatsoever because Presley failed to obtain court approval of his employment to sell the personal property prior to conducting the auction. Secondly, he failed to produce a complete contract signed by the Debtor authorizing the terms or referencing the Vehicles.[6] Third, as Johnson's testimony and the certificate of title to the Jaguar established that it is owned by a non-debtor third party, she did not have authority to sell it, it is not property of the estate, and this Court does not have jurisdiction to adjudicate any purported claims against non-parties related thereto. With regard to the Mercedes, the Court found Johnson's testimony credible as to her daughter's interest, the outstanding lien thereon, and the condition thereof. It was incumbent upon the

---

[6] The only documents produced were and unsigned Auction Proposal (Doc. 90) and the first page of a document entitled "Personal Property Auction Agreement" which besides being unsigned, was notably incomplete, did not include referenced attachments, and stated that the Auctioneer would deliver the auction proceeds to the Seller within 14 days of the auction, which was not done and would not have been permissible or approved by the Court due to the bankruptcy proceeding.

6

auctioneer to not only obtain court approval of his employment but also to exercise reasonable care in confirming ownership, existing liens, and the condition of the items offered for sale prior to the auction; his failure to do so is at his own peril. Lastly, as the Vehicles will not ultimately render any value to the Bankruptcy Estate, it would be prejudicial to unsecured creditors to allow a commission on the Vehicles from the proceeds of property of the estate.

In addition to the 30% commission on the Auction Proceeds, the Court finds that Presley is also entitled to reimbursement of $450.00 for the appraisal of the Real Property as his employment to sell the Real Property was approved and such fees were necessary, appropriate, and reasonable.

## **CONCLUSION**

For the reasons above, it is hereby ORDERED, ADJUDGED, and DECREED that the Debtor's Motion to Sell is GRANTED and the Auction Proceeds shall be distributed as follows:

1. Matt Presley d/b/a Matt Presley Auctioneers may retain $7,624.20 from the Auction Proceeds, consisting of $7,174.20 in commission and $450.00 in expenses.

2. Matt Presley d/b/a Matt Presley Auctioneers shall promptly remit the remaining $16,289.80 to the Chapter 13 Trustee to be held pending further order of the Court.

3. Payment to the Chapter 13 Trustee shall be remitted within 10 days of this Order, denote the Debtor's name and bankruptcy case number, and be addressed as follows: Chapter 13 Trustee, P.O. Box 1779, Memphis, TN 38101-1779.

4. The Court retains jurisdiction to enforce the terms of this Order and non-compliance shall constitute grounds for sanctions.

5. A copy of this Order shall be served on the Debtor, Debtor's Counsel, the Chapter 13 Trustee, Attorney Cody Poe, and Matt Presley d/b/a Presley Auctioneers, via first class mail to 1442 West I-65 Service Road South, Mobile, AL 36693.

Dated: May 16, 2025

/s/ Jerry Oldshue
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE